**Dated: July 17, 2026**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RUSTON CHARLES WELCH, | ) | Case No. 21-12416-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| SE PROPERTY HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 21-01075-SAH |
| | ) | |
| RUSTON CHARLES WELCH, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
### RUSTON C. WELCH'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
### BRIEF IN SUPPORT, AND NOTICE AND OPPORTUNITY FOR HEARING  [DOC. 63]

On February 26, 2026, defendant Ruston C. Welch ("Welch") filed Ruston C. Welch's

Motion for Partial Summary Judgment, Brief in Support, and Notice and Opportunity for

Hearing [Doc. 63] (the "Motion").  In response, on March 12, 2026, plaintiff SE Property

Holdings, LLC ("SEPH") filed Plaintiff's Response to Motion for Partial Summary Judgment and Brief in Opposition, with Certificate of Service [Doc. 64] (the "Response"). Then, on March 26, 2026, Welch filed Ruston C. Welch's Reply in Support of Motion for Partial Summary Judgment and Brief in Support [Doc. 65] (the "Reply").

In the Motion, Welch seeks partial summary judgment on the issue of whether SEPH has a security interest in certain settlement proceeds arising from the clean up of the Deepwater Horizon oil spill in the Gulf of Mexico (the "Deepwater Spill"). Welch argues he is entitled to summary judgment in his favor on SEPH's claim under 11 U.S.C. § 523(a)(6)[1] if SEPH does not hold such security interest.

## JURISDICTION

The Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I). Furthermore, Plaintiff and Defendant consent to entry of final orders and judgment by the Court in this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012 [Docs. 53, 59].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant proves there is no genuine issue of material fact, and movant is entitled to summary judgment as a matter of law. Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003) (citing Fed. R. Civ. P. 56(c)). The movant bears the burden of demonstrating the absence of disputed material facts warranting summary

---

[1] Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

2

judgment. Gough v. Lincoln Cnty. Bd. of Cnty. Comm'rs, No. CIV-14-1093-D, 2016 WL 164632, at *1 (W.D. Okla. Jan. 13, 2016) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit." Adams v. Am. Guarantee and Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000)). A genuine dispute is present if a fact finder could find in favor of the nonmoving party based on the evidence in the record. Horizon/CMS Healthcare Corp., 220 F.3d at 1190 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The movant must establish each element of its claim or defense by sufficient, competent evidence to set forth a *prima facie* case. Reynolds v. Haskins (In re Git-N-Go, Inc.), No. 04-10509-R, 2007 WL 2816215, at *2 (Bankr. N.D. Okla. Sept. 25, 2007) (citing In re Ribozyme Pharm., Inc., Sec. Litig., 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002)). Once the movant satisfies its initial burden, the burden shifts to the nonmovant to set forth specific facts demonstrating a genuine issue for trial. Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 994 (10th Cir. 2019) (citing Anderson, 477 U.S. at 250); Savant Homes, Inc. v. Collins (In re Savant Homes, Inc.), 809 F.3d 1133, 1137 (10th Cir. 2016). The nonmovant must identify facts with reference to affidavits, deposition transcripts, or specific exhibits to establish a genuine issue for trial. Libertarian Party of NM v. Herrera, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)).

On summary judgment, the record must be considered in the light most favorable to the party opposing summary judgment. Bank of Cushing v. Vaughan (In re Vaughan), 342 B.R. 385, 2006 WL 751388, at *2 (10th Cir. BAP Mar. 22, 2006), aff'd, 233 F. App'x 783 (10th Cir. 2007) (citing Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984)). Similarly, the Court must

3

review "the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party." Doe v. Univ. of Denver, 952 F.3d 1182, 1189 (10th Cir. 2020) (citing Evans v. Sandy City, 944 F.3d 847, 852 (10th Cir. 2019)).

## UNCONTROVERTED STATEMENTS OF MATERIAL FACT

SEPH attempts to dispute uncontroverted facts by inserting additional facts which do not change the simple and straightforward facts asserted by Welch.  However, SEPH's disputes do almost nothing to render the underlying facts stated by Welch subject to dispute.  Moreover, SEPH's "disputes" with most of the facts, more often than not, take the form of legal argument which in no way controverts Welch's facts.[2]

1. SEPH asserts a security interest in the claim of Neverve LLC ("Neverve") arising from the Deepwater Spill and proceeds thereof (the "Neverve Proceeds") based on the Second Supplement to Loan Documents, dated June 23, 2011 (the "Second Supplement").  Motion, p. 3, ¶ 1 and Ex. 1; Response, p. 3, ¶ 1.

2. The Second Supplement was not signed by Neverve.  Motion, Ex. 1; Motion, Ex. 2, p. 84:18-21; Response, pp. 3-4, ¶ 2.

3. SEPH has admitted under oath that "Neverve is not a named signatory to the Second Supplement."  Motion, Ex. 3, p. 2, Response to Request for Admission No. 1; Response, p. 5, ¶ 3.

---

[2] Local Rule 7056-1.C provides:  "The response brief shall begin with a section stating, by paragraph number, each of the movant's facts to which the non-movant contends a genuine issue exists **and shall refer with particularity to those portions of affidavits, discovery materials, Documents, and other relevant parts of the record before the Court upon which the non-movant relies to dispute the movant's fact**."

4. The Second Supplement expressly provides it "shall be governed by and construed in accordance with the laws of the State of Alabama."  Second Supplement, p. 7, ¶ 14; Response, p. 6, ¶ 4.

5. The Second Supplement defines the following capitalized terms : (a) "**Borrowers**" as ZLM Acquisitions, LLC ("ZLM"), and Zeke's Landing Marina, LLC ("Marina"); and (b) "**Affiliates**" as Zeke's Charter Fleet, LLC ("Charter"), Zeke's Lady, LLC ("Lady"), P&P Acquisitions, LLC, d/b/a Bayou Waters Sports ("Bayou"), and S&S, LLC, d/b/a Geno's Fresh Catch Grill ("Geno").  Second Supplement p. 1; Motion, p. 4, ¶ 6; Response, p. 6, ¶ 6.

6. SEPH made separate loans to (a) ZLM/Marina, and (b) Neverve.  Motion, p. 3, ¶ 5; Response, p. 6, ¶ 5; Second Amended Complaint [Doc. 53], p. 3, ¶¶ 12-13 and p. 4, ¶ 19; Amended Answer to Second Amended Complaint [Doc. 59], p. 2, ¶¶ 12-13 and p. 3, ¶ 19.

7. SEPH's corporate representative admitted under oath no Borrower or Affiliate had any rights in the Neverve Proceeds prior to the Second Supplement.  Motion, Ex. 2, p. 59:18-60:25; Motion, p. 4, ¶ 7; Response, p. 7, ¶ 7.

8. The Second Supplement defines and describes the collateral it covers as the "**BP Claims**," which are expressly limited to the claims, lawsuits, and damages of Borrowers and Affiliates.[3]  Motion, p. 4, ¶ 8; Response, p. 7, ¶ 8; Second Supplement, p. 2, ¶ 3.

---

[3] The heading of paragraph 3 of the Second Supplement is titled BP Claims:  All Affiliates Included.  Paragraph 3 is the paragraph granting a security interest in the BP Claims, stating specifically:  "As additional collateral and security for the Restated Note, **Borrowers** have heretofore granted and **Borrowers** and **Affiliates** hereby pledge, assign and grant [SEPH] a security interest under the UCC in and to all such BP Claims . . . and all proceeds thereof (collectively, the "BP Collateral"), as follows:" then identifies only ZLM, Marina, Charter, Lady and Bayou at 100% of the BP Collateral pledged and Geno at 50% of the BP Collateral pledged.  Motion, Ex. 1, pp. 2-3, ¶ 3(b).  Absolutely no mention is made of either Neverve or its percentage of the BP Collateral in this granting paragraph.

9. The Second Supplement does not describe, reference, or purport to include any property of Neverve, including the Neverve Proceeds, as collateral. Motion, p. 4, ¶ 9; Response, p. 7, ¶ 9; Second Supplement.

10. All Borrowers and Affiliates executing the Second Supplement were Alabama limited liability companies. The real property mortgaged to secure the ZLM loan was located in Alabama, and all of Borrowers' and Affiliates' operations were conducted in Alabama. Second Supplement, p. 1; Motion Ex. 2, pp. 20:18-24 and 107:23-108:09; Motion p. 4, ¶ 10; Response p. 8, ¶ 10.

11. Neverve was organized under Florida law and was a stand-alone business, operating independently from Borrowers and/or Affiliates. Second Amended Complaint [Doc. 53], ¶¶ 12-13; Second Supplement p. 1; Motion Ex. 2, 20:12-21:06; Motion p. 4, ¶ 11; Response p. 8, ¶ 11.

12. Other than David Stewart ("Stewart"), ZLM, Marina, and Neverve had different owners, guarantors, and loan participants. Motion Ex. 2, 19:18-20:10, 21:15- 24:23, 102:11-14, 103:21-104:19; Motion p. 4, ¶ 12; Response p. 8, ¶ 12.

## SEPH'S STATEMENT OF ADDITIONAL FACTS

SEPH's statement of additional facts does nothing to establish it has a security interest under the Alabama Uniform Commercial Code, Ala. Code § 7-1-101 to § 7-12A-306 (the "UCC") in the Neverve Proceeds. However, they are somewhat relevant to the extent they demonstrate Welch is not entitled to summary judgment on SEPH's Section 523(a)(6) claim.

1. On October 2, 2015, Welch notified the Trustee in Stewart's bankruptcy case "[t]he BP claim that the estate has an interest in that is not subject to [SEPH] is the claim of shimmering sands development company." Response, Ex. 2. This communication was

6

sent before Neverve received the Neverve Proceeds and paid them to Welch Law Firm, P.C. ("WLF") and/or Welch. Response, Ex. 2.

2. On June 6, 2016, Stewart emailed Rob Shaff and Welch regarding the taxability of the settlement funds Neverve would soon receive from BP, and Stewart stated, "I'm pretty certain we kept [Neverve] current in Florida due to outstanding opt out BP claims which SEPH will get." Response, Ex. 3.

3. As noted by SEPH in its Second Amended Complaint and admitted by Welch, WLF was paid almost $350,000 from the Neverve Proceeds, and a substantial majority of such funds were used to pay for Stewart's personal bankruptcy fees. Response, Ex. 4; Second Amended Complaint, pp. 5-6, ¶¶ 31, 33; Amended Answer to Second Amended Complaint p. 5, ¶¶ 31, 33.

4. There is no evidence in the record Neverve has or had any other creditors. Stewart testified he did not believe Neverve had any other creditors except SEPH or its predecessor. Response, Ex. 5, pp. 111:23-112:8.

5. In May 2016, before the receipt of the Neverve Proceeds by WLF, SEPH took the deposition of the in-house counsel for Stewart and related entities, Ms. Linda McGuire ("McGuire"), and Welch attended said deposition as counsel for Stewart. Response, Ex. 6. SEPH's counsel specifically asked whether there was an intent to include all BP claims of any affiliates of the Stewarts in the Second Supplement, and Welch raised an objection to the question. Response, Ex. 6, p. 146:7-10. McGuire herself acknowledged the Second Supplement refers to affiliates and, in her opinion, claims of a different Stewart affiliate that was not specifically named would be included given the reference to affiliates. Response, Ex. 6, p. 145:19-25. Additionally, in communications with McGuire

after the Neverve Proceeds had been paid to WLF, Stewart stated "[k]eep in mind the opt

out claims have been paid and what's left after Atty [sic] fees is in [Welch's] trust

[account].  I assume when seph finds out they've been paid they'll be screaming."

Response, Ex. 7.

## APPLICABLE STATUTORY PROVISIONS

Ala. Code § 7-9A-203[4] provides in pertinent part:

> (b) Enforceability. Except as otherwise provided in subsections (c) through (i), a
> security interest is enforceable against the debtor and third parties with respect to
> the collateral only if:
> (1) value has been given;
> (2) the debtor has rights in the collateral or the power to transfer rights in the
> collateral to a secured party; and
> (3) one of the following conditions is met:
>> (A) the debtor has authenticated a security agreement that provides a
>> description of the collateral and, if the security interest covers timber to be
>> cut, a description of the land concerned;
>> (B) the collateral is not a certificated security and is in the possession of
>> the secured party under Section 7-9A-313 pursuant to the debtor's security
>> agreement;
>> (C) the collateral is a certificated security in registered form and the
>> security certificate has been delivered to the secured party under Section
>> 7-8-301 pursuant to the debtor's security agreement; or
>> (D) the collateral is deposit accounts, electronic chattel paper, investment
>> property, or letter-of-credit rights, and the secured party has control under
>> Section 7-7-106, 7-9A-104, 7-9A-105, 7-9A-106, or 7-9A-107 pursuant to
>> the debtor's security agreement.

## CONCLUSIONS OF LAW

In the Motion, Welch asserts SEPH does not have a security interest in the Neverve

Proceeds and seeks summary judgment in his favor on SEPH's Section 523(a)(6) claim.  Welch

argues, "[w]ithout such an enforceable security interest, SEPH cannot establish injury to

---

[4] The Second Supplement provides it "shall be governed by and construed in accordance with the
laws of the State of Alabama."  Motion, Ex. 1, p. 7, ¶ 14.  The version of Ala. Code § 7-9A-203
set forth is the version in effect at the time the Second Supplement was executed.

8

'property of another,' and its § 523(a)(6) claim for injury to property fails as a matter of law." Motion, p. 2. Although the Court agrees SEPH has no security interest under the UCC in the Neverve Proceeds, the Court disagrees the lack of such interest precludes a claim under Section 523(a)(6).

## I. SEPH DOES NOT HAVE A SECURITY INTEREST UNDER THE UCC IN THE <u>NEVERVE PROCEEDS.</u>

SEPH argues the parties to the Second Supplement intended to include Neverve as a party thereto and the Neverve Proceeds as collateral thereunder and, as a result, whether Neverve was a party to the Second Supplement is a disputed fact. The intent to include Neverve, according to SEPH, can be found in paragraph 3(d) of the Second Supplement, which states:

> Borrowers and each Affiliate hereby represent and warrant unto Bank that there are no subsidiary or parent companies of any Borrower or any Affiliate, or any affiliate company of any Borrower (meaning any company owned directed or indirectly or in whole or in part by any Borrower or by any owner or principal of any Borrower), that has filed or possesses any BP Claims that are not a party to [the Second Supplement].

SEPH further argues Stewart pledged the Neverve Proceeds as collateral in the Second Supplement as he had sufficient rights to do so. The Court disagrees on both counts.

Alabama's policy goals in adopting the UCC are expressly set out in Ala. Code § 7-1-102(2): "(a) To simplify, clarify and modernize the law governing commercial transactions; (b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties; (c) To make uniform the law among the various jurisdictions." <u>Rent-A-Center v. Shelby</u> (<u>In re Shelby</u>), 127 B.R. 682, 689-90 (Bankr. N.D. Ala. 1991). Furthermore, the UCC has a "presumption in favor of predictability and the finality of commercial transactions." <u>MidWestOne Bank v. Heartland Co-op</u>, 941 N.W. 2d 876, 884 (Iowa 2020), as amended (June 11, 2020) (citing <u>Husker News Co. v. Mahaska State Bank</u>, 460 N.W.2d

9

476, 477 n.2 (Iowa 1990). Secured transactions are governed by Article 9A of the UCC, the aim of which is to reduce the risk and cost of extending credit and thereby facilitate secured transactions. Budsberg v. Premier Credit Co. (In re Kincaid), 218 B.R. 965, 968 (Bankr. W.D. Wash. 1998); Matter of Reda, Inc., 54 B.R. 871, 878 (Bankr. N.D. Ill. 1985) ("Article 9 was adopted in part to provide notice to parties about the debtor's property and offer certainty and protection to a party with a secured interest in that property."). The Official Comment to Article 9 specifically provides: "One evidentiary purpose of the formal requisites stated in [§ 7-9A-203(b)] is to *minimize the possibility of future disputes as to the terms of a security agreement* (e.g., as to the property that stands as collateral for the obligation secured)." Official Comment 5 to § 7-9A-203. The Court conducts its analysis with these aims in mind.

The UCC defines a "security agreement" as "an agreement that creates or provides for a security interest." Ala. Code § 7-9A-102(73). Furthermore, a "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Ala. Code § 7-1-201(35). A security interest is only enforceable where: (i) value has been given; (ii) the debtor has rights in the collateral; and (iii) the debtor has authenticated a security agreement that provides a description of the collateral.[5] Ala. Code § 7-9A-203(b); In re Jones, 544 B.R. 692, 697 (Bankr. M.D. Ala. 2016). No magic words are required to create a security interest; however, the parties must express an intent to create a security interest, and the language must "lead to the logical conclusion that it was the intention of the parties that a security interest be created." In re Womack, 616 B.R. 420, 426 (Bankr. M.D. Ala. 2020), aff'd

---

[5] The UCC provides additional circumstances under which a security interest can be enforceable such as where the collateral is in the possession of the secured party, or the secured party has control. Ala. Code § 7-9A-203(b)(3). However, these circumstances are not relevant in the present proceeding.

10

sub nom. TitleMax of Alabama, Inc. v. Womack, No. 2:20-CV-416-WKW, 2021 WL 1343051 (M.D. Ala. Apr. 9, 2021), aff'd sub nom. In re Womack, No. 21-11476, 2021 WL 3856036 (11th Cir. Aug. 30, 2021) (citing In re Burnsed, 224 B.R. 496, 498 (Bankr. M.D. Fla. 1998) (quoting Gibson v. Resolution Trust Corp., 51 F.3d 1016, 1022 (11th Cir. 1995))).

### A. The Second Supplement unambiguously sets forth the parties and collateral, and neither Neverve nor the Neverve Proceeds are included.

The words of a contract, including a security agreement, must be given their ordinary meaning. Austin Apparel, Inc. v. Bank of Prattville, 872 So.2d 158, 165 (Ala. Civ. App. 2003) (citing Food Serv. Distribs., Inc. v. Barber, 429 So.2d 1025, 1028 (Ala.1983) (citing Sisco v. Empiregas, Inc., 286 Ala. 72, 237 So. 2d 463 (1970))); Semco Div., Delwood Furniture Co., Inc. v. Williams (In re Metzler), 405 F.Supp. 622, 625 (M.D.Ala.1975). Where the language of a contract is unambiguous, it must be enforced as written. Austin Apparel, 872 So.2d at 165 (first citing Ex parte Conference America, Inc., 713 So.2d 953, 956 (Ala.1998); and then citing Ex parte South Carolina Ins. Co., 683 So.2d 987, 989 (Ala.1996)).

A contract is ambiguous when its terms "are susceptible of more than one reasonable meaning." Davis Constr. Supply, LLC v. Merchants Transfer Co., 676 F. Supp. 3d 1192 (S.D. Ala. 2023) (citing Homes of Legend, Inc. v. McCollough, 776 So. 2d 741, 746 (Ala. 2000)). To determine whether a contract contains ambiguity, the Court must apply the common interpretation of the allegedly ambiguous language. Porter Cap. Corp. v. Haralson, No. 2:11-CV-1620-JHH, 2012 WL 4813769, at *7 (N.D. Ala. Oct. 10, 2012) (quoting Porterfield v. Audubon Indem. Co., 856 So.2d 789, 799 (Ala.2002)). The plain meaning of a contract's terms may not be twisted "to create an ambiguity under the guise of interpretation." Porter Cap. Corp., 2012 WL 4813769, at *7 (citing Booth v. Newport Television, LLC, 111 So. 3d 719, 724 (Ala. Civ. App. 2011)).

11

The Second Supplement is not ambiguous.  The parties are clearly defined in the first paragraph as follows:  (i) "Borrowers" are ZLM and Marina; (ii) "Guarantors" are Thomas P. Steber, Jr., Maurice J. Fitzsimons, and Stewart; (iii) "Affiliates" are Charter, Lady, Bayou, and Geno; and (iv) "Lender" or "Bank" is Vision Bank.[6]  Additionally, the collateral is clearly defined in Paragraph three as follows:

> (a) Borrowers and Affiliates acknowledge and represent to Bank that Borrowers and Affiliates have heretofore filed claims and lawsuits against the entity commonly known as BP and British Petroleum and/or its subsidiary, parent, or affiliate companies and/or claims funds, trust funds or similar funds or entities established and/or funded by one or more of the foregoing including the Gulf Coast Claims Facility (collectively, the "BP Companies"), and hereafter may file additional claims and lawsuits against the BP Companies (collectively, the "BP Claims"), for (i) lost revenue and other damages suffered or incurred by Borrowers and Affiliates due to the 2010 Deepwater Horizon oil spill in the Gulf of Mexico (the "Spill"), and (ii) moneys owed each Borrower and each Affiliate for any work done and fuel and other supplies provided by Borrowers and Affiliates and/or their agents, contractors or employees and for vessels provided by Borrowers and Affiliates in connection with the cleanup of the Spill.  As additional collateral and security for the Restated Note, Borrowers have heretofore granted and Borrowers and Affiliates hereby pledge, assign and grant Bank a security interest under the UCC in and to all such BP Claims and all judgments and awards obtained against any and all BP Companies and all receivables owed by the BP Companies and all payments made by any and all of the BP Companies pursuant to the BP Claims (the "BP Payments") and all proceeds thereof (collectively, the "BP Collateral"), as follows:

| Pledgor | Percentage BP Collateral Pledged |
|---|---|
| 1. ZLM | 100% |
| 2. Marina | 100% |
| 3. Charter | 100% |
| 4. Lady | 100% |
| 5. Bayou | 100% |
| 6. Geno | 50% |

Second Supplement, p. 2 ¶ 3.  The collateral in the Second Supplement is clearly limited to the BP Claims of ZLM, Marina, Charter, Lady, Bayou, and Geno.  The Neverve Proceeds are not

---

[6] SEPH is successor in interest to Vision Bank.  Second Amended Complaint [Doc. 53], filed on July 30, 2025, p. 3, ¶ 12.

included in the above comprehensive list describing the BP Collateral. Also, Neverve is plainly not a party to the Second Supplement, neither being named in or executing the Second Supplement.

As a general rule, a contract binds the parties thereto, and a person who is not a party to the contract cannot be bound by it. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 764, 151 L. Ed. 2d 755 (2002) ("It goes without saying that a contract cannot bind a nonparty."); Norfolk S. Ry. Co. v. Groves, 586 F.3d 1273, 1281-82 (11th Cir. 2009) (citing Miles v. Naval Aviation Museum Found., Inc., 289 F.3d 715, 720 (11th Cir. 2002)) ("[I]t is a tenant of contract law that 'a third-party cannot be bound by a contract to which it was not a party.'"); RESCO, Inc. v. GLAC Holdings, L.L.C., No. 275467, 2008 WL 400679, at *1 (Mich. Ct. App. Feb. 14, 2008). Here, Neverve is not a named party to the Second Supplement, did not sign the Second Supplement in any capacity, and its name and its property are not described in any form or fashion in the Second Supplement. Nothing in the Second Supplement can be interpreted as an affirmative action by Neverve manifesting its intent to grant a security interest in the Neverve Proceeds to SEPH – it is not ambiguous but startling clear. Neverve is simply not a party to the Second Supplement, and therefore, cannot be bound by it. E.E.O.C., 534 U.S. at 294.

The Court does not find, and SEPH does not argue, the language in paragraph 3(d) creates an ambiguity in the Second Supplement. Instead, SEPH argues it evidences the parties' intent to include Neverve. However, paragraph 3(d)'s language neither purports to add any party to the definitions of Borrowers, Guarantors, or Affiliates, nor does it add any property to the scope of the BP Collateral. As Welch's Motion points out, while the representation in paragraph 3(d) may have been breached by the Borrowers and Affiliates, it does not make Neverve a party

13

to the Second Supplement. The Court, therefore, cannot logically conclude Neverve pledged the Neverve Proceeds.

As detailed above, one of the primary purposes of the UCC is to promote clarity in commercial transactions. As specifically explained in the UCC Official Comment, the requirements for enforceability set forth in Ala. Code § 7-9A-203(b) exist to minimize disputes as to a security agreement's terms such as what property is pledged as collateral. In the Second Supplement, the BP Collateral pledged is specifically described and does not include the Neverve Proceeds. To disrupt the plain description of the parties and the collateral set forth in the Second Supplement would be contrary to the UCC and its purposes.

**B.     Stewart did not grant a security interest in his rights to the Neverve Proceeds in the Second Supplement.**

Although Neverve is not bound by the Second Supplement, Stewart is a party and could pledge whatever rights he had in the Neverve Proceeds; however, the Neverve Proceeds are not described as collateral in the Second Supplement. In some circumstances, courts have found a valid security interest where a party with rights to the collateral, but who was not the owner of the collateral, authenticated the security agreement. "Rights in the collateral" is not defined by the UCC, but it does not mean the same thing as "ownership." First Nat'l Bank of Alexander City v. Avondale Mills Bevelle Emps. Fed. Credit Union, 967 F.2d 556, 559 (11th Cir. 1992) (citing Merchants Bank v. Atchison (In re Atchison), 832 F.2d 1236, 1239 (11th Cir. 1987)). Since the UCC does not explain what "quantum of rights" a debtor must have in collateral to grant a security interest, "less than full 'legal title' will do and the secured party will get whatever rights the debtor had." Atchison, 832 F.2d at 1239 (citing 1 G. Gilmore, Security Interests in Personal Property § 11.5, at 353 (1965)); Kirtley v. Mabrey Bank (In re Rudick), 639 B.R. 249, 253 (Bankr. N.D. Okla. 2022).

14

Courts have generally ruled a debtor has sufficient rights in property to create an enforceable security interest where the owner has given a debtor permission to use the property as collateral.  Atchison, 832 F.2d at 1239 (first citing In re Pubs, Inc. of Champaign, 618 F.2d 432, 436 (7th Cir.1980) (individual debtor; corporate owner); then citing K.N.C. Wholesale, Inc. v. AWMCO, Inc., 56 Cal.App.3d 315, 128 Cal. Rptr. 345, 348 (1976) (parent corporation debtor; subsidiary owner); then citing Murray v. Conrad, 346 N.W.2d 814, 820 (Iowa 1984) (individual debtor; corporate owner); and then citing GMAC v. Washington Trust Co. of Westerly, 120 R.I. 197, 386 A.2d 1096, 1098 (1978) (husband debtor; wife owner)).  Courts have also found sufficient rights in the collateral where a debtor's rights go beyond "mere possession, such as the right to use and control the collateral." Atchison, 832 F.2d at 1239 (first citing Douglas-Guardian Warehouse Corp. v. Esslair Endsley Co., 10 U.C.C. 176, 184 (W.D. Mich. 1971); then citing Bellrose v. Denver Florists' Federal Credit Union, 682 P.2d 1224, 1226 (Colo. Ct. App. 1983); then citing Morton Booth Co. v. Tiara Furniture, Inc., 564 P.2d 210, 214 (Okla. 1977); then citing Uniroyal, Inc. v. Michigan Bank, 12 U.C.C. 745, 750 (Mich. Cir. Ct. 1972)).

It is unclear whether Stewart had rights in the Neverve Proceeds sufficient to grant a security interest.[7]  While Stewart had some right to "use and control" the Neverve Proceeds as evidenced by his later use of a portion to pay his personal legal fees, Stewart was not the sole owner of Neverve.

More importantly, in every case reviewed by the Atchison court finding a non-owner party had rights to grant a security interest, the collateral was *clearly described* in the security agreement as required by UCC § 7-9A-203(b).  Atchison, 832 F.2d at 1239 (11th Cir. 1987)

---

[7] The burden of proving property is subject to a security interest is on the party asserting the interest.  Kirtley v. Mabrey Bank (In re Rudick), 639 B.R. 249, (Bankr. N.D. Okla. 2022) (citing In re Gamma Ctr., Inc., 489 B.R. 688, 693 (Banrk. N.D. Ohio 2013)).

(gathering cases).[8] Here, the Neverve Proceeds are not identified in the Second Supplement as collateral or anywhere else and, therefore, were not pledged as collateral by a debtor (Stewart) or owner (Neverve). It is simply not possible for Stewart to have pledged the Neverve Proceeds pursuant to the Second Supplement based on his "rights in the collateral" because the Neverve Proceeds were never pledged at all.

SEPH relies heavily on 4-R Management to argue Stewart, as an owner of Neverve, could pledge the Neverve Proceeds despite Neverve not being a named party in the Second Supplement. Matter of 4-R Mgmt., Inc., 208 B.R. 232 (Bankr. N.D. Ala. 1997). SEPH's reliance is misplaced. In 4-R Management, the owners (who were also officers) of 4-R Management signed a security agreement granting a security interest in a coin collection owned by 4-R Management to a bank. The owners/officers, however, signed the security agreement in their individual capacities, not on behalf of 4-R Management. The court determined the bank had a valid security interest despite not being signed by 4-R Management because of the following: (i) 4-R Management executed the underlying promissory note which incorporated the security agreement; (ii) 4-R management executed two renewal notes which expressly granted a security interest in the coin collection and referenced the security agreement; (iii) the 4-R Management owners/officers delivered the coin collection to the bank which maintained possession of the coin collection (thus satisfying 7-9A-203(1)(a)); and (iv) the 4-R Management owners/officers had

---

[8] Pubs, Inc. of Champaign, 618 F.2d at 435 (certain scheduled equipment, fixtures, furnishings, and supplies); K.N.C. Wholesale, Inc., 128 Cal.Rptr. at 347 (certain equipment); Murray, 346 N.W.2d at 817 (clearly described beer inventory); GMAC, 386 A.2d at 1097-98 (1972 Cadillac Sedan DeVille); Douglas-Guardian Warehouse Corp., 10 U.C.C. at 180 (all business inventory now in stock and later acquired); Bellrose, 682 P.2d at 1226 (certain stock certificates); Morton Booth Co. v. Tiara Furniture, Inc., 564 P.2d at 211 (all present and after-acquired inventory); Uniroyal, Inc., 12 U.C.C. at 750 (certain vehicles and equipment).

16

sufficient rights in collateral to infer corporate consent as they were the sole owners of 4-R Management and they had use and control over the coin collection. 4-R Management, 208 B.R. at 235-38. Such circumstances are not present here. SEPH does not provide evidence of a promissory note executed by Neverve incorporating the Second Supplement, SEPH never had possession of the Neverve Proceeds, and Stewart was not the sole owner of Neverve. And, most significantly, the specifically-described collateral in the Second Supplement did not include the Neverve Proceeds. The situation in this adversary proceeding does not resemble 4-R Management.

SEPH also cites to Ala. Code § 7-9A-203(d)(1) and (e)(1) to show the UCC provides a person or entity can become bound by a security agreement entered into by a third party. However, the function of these subsections is to make a security agreement of a predecessor entity effective against the successor entity. 4 James J. White, Robert S. Summers & Robert A. Hillman, Uniform Commercial Code, § 31:43 (6th ed.); Official Comment 7 to Ala. Code § 7-9A-203. It is, therefore, not applicable to the facts before the Court, nor does it provide support for the assertion a party to an agreement can bind a non-party who is a non-successor entity.

Welch has demonstrated there is no genuine issue of material fact as to whether SEPH has a security interest in the Neverve Proceeds under the UCC. Welch is, therefore, entitled to judgment as a matter of law that SEPH does not have a security interest under the UCC in the Neverve Proceeds.

## II.     THE LACK OF A SECURITY INTEREST UNDER THE UCC DOES NOT FORECLOSE SEPH'S SECTION 523(a)(6) CLAIM.

SEPH argues summary judgment cannot be entered on the Section 523(a)(6) claim because Section 523(a)(6) does not require a security interest, and SEPH asserts it has an

17

equitable lien or, alternatively, a claim for Welch's violation of Florida law.  The Court agrees a Section 523(a)(6) does not require a security interest.

Welch states, with no authority, summary judgment is proper on the Section 523(a)(6) as a matter of law because "[w]ithout a security interest, there is no 'property' upon which an 'injury' could be inflicted."  Motion, p. 9.  However, Section 523(a)(6) excludes from discharge debts "for willful and malicious injury by the debtor **to another entity or to the property of another entity**."  SEPH may establish a willful injury with direct evidence Welch "acted with the specific intent to harm [SEPH] or [SEPH's] property, or by indirect evidence that [Welch] desired to cause the injury or believed the injury was substantially certain to occur."  Perry v. Judge (In re Judge), 630 B.R. 338, 345 (10th Cir. BAP 2021) (citing First Am. Title Ins. Co. v. Smith (In re Smith), 618 B.R. 901, 912 (10th Cir. BAP 2020)).  SEPH may prove a malicious injury by showing Welch acted wrongfully and without justification or excuse.  Smith, 618 B.R. at 919-20 (holding Section 523(a)(6) encompasses intentional torts such as tortious interference with a contract).  Welch provides no explanation how the lack of a security interest precludes SEPH (or its property) from being willfully and maliciously injured, and the Court finds no such requirement in Section 523(a)(6).

Accordingly, it is not necessary for the Court to determine whether SEPH has an equitable lien, or whether Welch violated Florida law. Welch has not established he is entitled to judgment on SEPH's Section 523(a)(6) claim simply because SEPH lacks a security interest under the UCC.

**CONCLUSION**

For the reasons set forth above, the Court partially grants Welch's Motion and holds

18

SEPH does not have a security interest under the UCC in the Neverve Proceeds.  However, the Court denies Welch's request for summary judgment on SEPH's 523(a)(6) claim.  A trial will be conducted on September 28, 2026, at 9:30 a.m. in the Ninth Floor Courtroom.

IT IS SO ORDERED.

# # #